IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALIXTO GOMEZ, | § | |
| TDCJ #1190120, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1556 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Calixto Gomez (TDCJ #1190120) has filed a petition under 28 U.S.C. § 2254, seeking a federal writ of habeas corpus.  He challenges a state court conviction and fifty-year prison sentence for possession with intent to deliver a controlled substance, namely, heroin.  Gomez has filed a lengthy memorandum in support of his petition.  The respondent has answered with a motion for summary judgment, arguing that Gomez is not entitled to relief.  (Doc. # 13).  Gomez has filed a response. (Doc. # 14).  After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.      BACKGROUND

According to the record, Gomez sold approximately four ounces of black tar heroin to an undercover narcotics officer on February 19, 2003.  On February 27, 2003, Gomez sold twenty ounces of heroin to the same officer.  Gomez was arrested at the scene, where officers

read Gomez his *Miranda* rights,[1] and then obtained written consent to search his apartment. The officers also obtained written consent to search the apartment from Gomez's sister, with whom he apparently shared the residence. A search of the apartment revealed approximately ten pounds of marijuana along with other tools of the drug trade, including a digital scale and an automatic firearm. Officers also found a large quantity of heroin inside of a garbage bag that had been concealed in a steel pot that had Gomez's fingerprints all over it. Officers estimated that the amount of heroin recovered from Gomez's residence was worth over one million dollars.

A state grand jury returned three indictments against Gomez, charging him with possession of a controlled substance with intent to deliver at least 400 grams of heroin (cause number 940736) and two counts of delivery of a controlled substance for the transactions that occurred on February 19, 2003 and February 27, 2003 (cause numbers 940734, 940735). Following a joint trial, a jury in the 185th District Court of Harris County, Texas, found Gomez guilty of the charges lodged against him in all three indictments. On August 21, 2003, the trial court sentenced Gomez to serve fifty years in prison.

On direct appeal, Gomez argued that he was denied effective assistance of counsel at his trial. The court of appeals rejected Gomez's arguments and affirmed the judgment in an unpublished opinion. *See Gomez v. State*, No. 13-03-000627-CR (Tex. App. — Corpus

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

Christi April 21, 2005).  In rejecting Gomez's arguments, the appellate court offered the

following assessment of the evidence introduced at trial:

> At trial, the State presented overwhelming proof of [Gomez's] guilt on all three counts.  [Gomez] was arrested during an undercover sting operation.  The evidence, including a surveillance video, shows that [Gomez] sold four ounces of black tar heroin to an undercover police officer for $4,800.  Roughly a week later, [Gomez] sold twenty ounces of heroin to the same officer for $20,000.  After the transaction, the undercover officer arrested [Gomez], and [Gomez] was taken to his apartment, where he gave police officers written consent to search the premises for more drugs. Inside the apartment, the officers discovered eight pounds of heroin, worth approximately $1.3 million.  According to the State, this is the largest amount of heroin ever seized by the Houston Police Department.

*See id.*, slip op. at 2.  The Texas Court of Criminal Appeals refused Gomez's petition for

discretionary review.  *See Gomez v. State*, PDR No. 1255-05 (Tex. Crim. App. Nov. 2, 2005).

Thereafter, the United States Supreme Court denied Gomez's petition for a writ of certiorari.

*See Gomez v. Texas*, — U.S. —, 126 S. Ct. 2324 (2006) (No. 05-9965).

Gomez now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254.  He

challenges only his conviction in cause number 940736 for possession with intent to deliver

400 grams or more of heroin.  Liberally construed, the petition and supporting memorandum

outline the following grounds for relief: (1) his conviction was obtained with evidence seized

pursuant to an unconstitutional search; (2) the seizure of evidence from his residence was

unconstitutional because he was not re-read his *Miranda* rights before officers conducted the

search; (3) the evidence recovered from his apartment should have been suppressed because

police did not inform him of his rights under Article 36 of the Vienna Convention on

Consular Relations, April 24, 1963, T.I.A.S. No. 6820, 21 U.S.T. 77 ("Vienna Convention")

before officers conducted the search of his residence; (4) the indictment was defective because the State failed to present sufficient evidence at trial; and (5) he was denied effective assistance of counsel at his trial.[2]  (Docs. 1 & 2, *Petition* and *Memorandum*).  These claims were raised and rejected by the Texas Court of Criminal Appeals based on findings and conclusions of law made by the trial court.  *See Ex parte Gomez*, No. 66,175-01 (Tex. Crim. App. Nov. 15, 2006).  In addition to these claims, Gomez asserts for the first time on federal habeas review that he is entitled to relief from his conviction because the state court did not hold a hearing on his habeas corpus application.  (Doc. # 2, *Memorandum* at 9-13).  The respondent has filed a motion for summary judgment, arguing that Gomez is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.    STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v.*

---

[2]     The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See id.*

*Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. 28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

1.      was contrary to, or involved an unreasonable application of,
        clearly established Federal law, as determined by the Supreme
        Court of the United States; or

2.      was based on an unreasonable determination of the facts in light
        of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing

that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate

decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982 (2002).

The burden is on the petitioner to show that he is entitled to relief under the highly

deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are

governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*,

534 U.S. 885 (2001).  The Supreme Court has clarified that "clearly established Federal law"

or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta,"

of decisions from the United States Supreme Court "as of the time of the relevant state-court

decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams

v. Taylor*, 529 U.S. 362, 412 (2000)).   A state court decision is "contrary to" clearly

established precedent if the state court arrives at a conclusion opposite to one reached by the

Supreme Court on a question of law or if the state court decides a case differently from the

Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

A state court decision is an "unreasonable application" of clearly established precedent if the

state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

## III. DISCUSSION

### A. Fourth Amendment Claims

Gomez argues that he is entitled to relief because his conviction was obtained with evidence seized pursuant to a search that violated the Fourth Amendment to the United States Constitution. The state habeas corpus court considered this claim and rejected it for procedural reasons, finding that it was "not cognizable" on collateral review. *Ex parte Gomez*, No. 66,175-01 at 94 (citing *Ex parte Kirby*, 492 S.W.2d 579, 580-81 (Tex. Crim. App. 1973)). The respondent argues that Gomez's claim is without merit, as the record reflects that he consented to the search of his residence. The respondent argues further that, to the extent that Gomez challenges the search, federal habeas corpus review is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).

7

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.  The Fifth Circuit has since interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Janecka v. Cockrell*,  301 F.3d 316, 320 (5th Cir. 2002) (citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a [F]ourth [A]mendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

Texas affords a process for criminal defendants to file a motion to suppress under Article 28.01 of the Texas Code of Criminal Procedure.  The record shows that Gomez's defense attorney filed a motion to suppress the State's evidence along with any statements made by Gomez. *See Clerk's Record*, Cause No. 940736 at 43-45.  The trial court addressed the motion briefly at a pretrial hearing, where the State noted that police officers obtained signed consent forms from Gomez and his sister before conducting the search. *See Court Reporter's Record*, Pretrial Motions, at 7-9.  The State introduced those consent forms at trial. *See Court Reporter's Record*, vol. 5, at 68-71.  Gomez did not challenge the search further and he did not raise a Fourth Amendment issue on direct appeal.

Gomez attempted to re-litigate his Fourth Amendment claims on state habeas corpus review.  Although Gomez's Fourth Amendment claims were held "not cognizable" on

collateral review, the record confirms that he was afforded sufficient opportunity for review of his claims at the state level.  This review is sufficient to trigger the *Stone* bar.  *See Janecka*, 301 F.3d at 320; *see also Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) ("absent a showing that . . . Texas courts systematically and erroneously apply the state procedural bar rule to prevent adjudication of Fourth Amendment claims," the *Stone* bar obtains).  Therefore, the petitioner's Fourth Amendment claims are precluded from federal habeas review.[3]  Because Gomez is not entitled to relief, the respondent is entitled to summary judgment on this issue.

**B.     *Miranda* Claims**

Gomez argues that he is entitled to relief because officers did not repeat his *Miranda* rights before conducting the search of his residence.  The state habeas corpus court rejected this claim along with Gomez's Fourth Amendment challenge as "not cognizable" on state habeas corpus review.  *See Ex parte Gomez*, No. 66,175-01 at 94.  The respondent argues that this claim is barred from federal habeas corpus review by the doctrine of procedural default.  The respondent notes that Gomez did not raise a *Miranda* objection at trial and, as a result, he waived error for purposes of appeal.  *See Stokes v. Procunier*, 744 F.2d 475, 480 (5th Cir. 1985) (noting that "Texas courts have not reached the merits of *Miranda* violations because of the failure of counsel to object contemporaneously") (citations omitted).  Gomez's

---

[3]     To the extent that Gomez complains that his counsel was constitutionally ineffective for his handling of the motion to suppress, that claim is without merit for reasons discussed in more detail below.

failure to preserve error for direct appeal in accordance with Texas law, and the state habeas corpus court's subsequent determination that his claim was not cognizable on state habeas corpus review, constitutes a procedural default that precludes federal habeas corpus review.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  It is the petitioner's burden to show that the "independent and adequate" state procedural rule at issue is not firmly established and regularly followed, or that it was capriciously applied under the circumstances. *See Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006) (citations omitted).  Gomez does not meet that burden here.  Gomez further fails to establish that any exception to the doctrine of procedural default applies.[4]  Therefore, his claim alleging violations of *Miranda* is procedurally barred from federal review.

In the alternative, the respondent argues that Gomez's claim for relief under *Miranda* is without merit.  The familiar procedural safeguards established in *Miranda v. Arizona*, 384

---

[4]    An exception to this doctrine exists where the petitioner demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law or that failing to consider his claim will yield a fundamental "miscarriage of justice." *Coleman*, 501 U.S. at 750.  Gomez does not argue that he is actually innocent or that his conviction has resulted in a fundamental miscarriage of justice.  Moreover, even if Gomez could establish cause for his default, he cannot demonstrate actual prejudice because, for reasons set forth above, he fails to show that his claim has merit.

U.S. 436 (1966), are designed to protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation.[5]  *See Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002).  The Fourteenth Amendment Due Process Clause also prohibits states from securing criminal convictions through the use of involuntary confessions resulting from coercive police conduct.  *See, e.g., Miller v. Fenton*, 474 U.S. 104, 112 (1985); *Brown v. Mississippi*, 297 U.S. 278 (1936).

The record shows that Gomez was given his *Miranda* warnings in English and in Spanish at the time of his arrest.  Sergeant A. Yanez of the Houston Police Department testified that he was present at the time of Gomez's arrest.  *See Court Reporter's Record*, vol. 5, at 64-65.  Sergeant Yanez noted that he was a "native speaker" of Spanish and that he advised Gomez of his rights under *Miranda* in both English and Spanish, following the card that had been issued to him by the Harris County District Attorney's Office.  *See id*. at 66-67. Sergeant Yanez testified further that Gomez appeared to understand his rights.  *See id*. at 67.

Gomez does not dispute that his *Miranda* rights were properly given upon his arrest and he does not allege or show that any of his statements were coerced by the police and he fails demonstrate that any statement was admitted at trial in violation of *Miranda*.  More importantly, Gomez does not articulate any constitutional requirement which shows that, once *Miranda* rights are given, they must be repeated before a search of a defendant's residence.  It is undisputed that the police officers in this case obtained written consent to

---

[5]     The Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

search the residence from Gomez's sister, with whom Gomez had been living at the time of his arrest.  Under these circumstances, Gomez has not demonstrated that his conviction was obtained in violation of the protection against self-incrimination or the Supreme Court's decision in *Miranda*.  Absent a showing that his statements were coerced and admitted at trial in violation of the Constitution, Gomez is not entitled to relief.  Therefore, the respondent's motion for summary judgment on this issue is granted.

C.      **Vienna Convention**

As a native and citizen of Mexico, Gomez contends that his conviction is invalid because he was not provided notice of his right to communicate with a consular representative in violation of Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, T.I.A.S. No. 6820, 21 U.S.T. 77 ("Vienna Convention"), as it applies to foreign nationals arrested in the United States.  Gomez appears to contend that, because police officers did not provide him with the notice required by Article 36, the evidence seized from his residence should have been suppressed.  The state habeas corpus court found that Gomez failed to assert his rights under the Vienna Convention prior to trial or to raise an issue on direct appeal.  *See Ex parte Gomez*, No. 66,175-01 at 94.  Accordingly, the state habeas corpus court concluded that Gomez's Vienna Convention claim was barred as the result of his procedural default.  *See id.* (citing *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2687 (2006)).

Pointing to the state court's conclusion, the respondent argues that Gomez's claim under the Vienna Convention is also barred from federal habeas corpus review by the

12

doctrine of procedural default.  The Supreme Court has recognized that "claims under Article 36 of the Vienna Convention may be subjected to the same procedural default rules that apply generally to other federal-law claims."  *Sanchez-Llamas v. Oregon*, — U.S. —, 126 S. Ct. 2669, 2687 (2006); *see also Breard v. Green*, 523 U.S. 371, 376 (1998) (per curiam). Gomez does not establish that he fits within any exception to the doctrine of procedural default.  More importantly, Gomez fails to show that he is entitled to relief for alternative reasons set forth below.

The respondent argues, in the alternative, that Gomez's claim has no merit because the Supreme Court has not decided that the Vienna Convention provides any individually enforceable rights.  The preamble to the Vienna Convention explains that it is "not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States . . . ."  The Fifth Circuit has recognized that "Article 36 of the Vienna Convention does not create an individually enforceable right."  *Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004), *cert. dismissed*, 544 U.S. 660 (2005); *see also United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir.) ("The sum of Jimenez-Nava's arguments fails to lead to an ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation between a detained foreign national and his consular office. Thus, the presumption against such rights ought to be conclusive."), *cert. denied*, 533 U.S. 962 (2001).

Even if there was an individually enforceable right to consular access, it is well established that the remedy of suppression that Gomez seeks – similar to that imposed when

13

defendants are not given their *Miranda* warnings – is not available.[6]   *See Sanchez-Llamas*,

126 S. Ct. at 2679; *Jimenez-Nava*, 243 F.3d at 198-99.  Because Gomez cannot show that he

had an enforceable right under the Vienna Convention, or a remedy for any violation thereof,

he cannot prevail on federal habeas corpus review.[7]

In summary, Gomez does not dispute that his claim is procedurally barred.  Likewise,

Gomez does not demonstrate that he is entitled to prevail on a claim under the Vienna

Convention.  Accordingly, the respondent's motion for summary judgment on this issue is

granted.

### D.     Defective Indictment — Factual Sufficiency of the Evidence

---

[6]     The Supreme Court's recent decision in *Medellin v. Texas*, — U.S. —, 2008 WL 762533 (March 25, 2008) (No. 06-984), has no bearing on the claims presented by Gomez.  The *Medellin* decision addresses a Memorandum issued by President George W. Bush on February 28, 2005, directing state courts to give effect to the *Case concerning Avena and Other Mexican Nationals* (Mex. v. U.S.), 2004 I.C.J. 12, which held that 51 named Mexican nationals were entitled to "review and reconsideration" of their state court convictions based on violations of the Vienna Convention.  The Supreme Court held that the *Avena* judgment is not directly enforceable as domestic law and that neither *Avena* nor the President's Memorandum pre-empt state limitations on the filing of successive habeas corpus petitions. *See Medellin v. Texas*, *supra*. Gomez, who is not a party to the *Avena* judgment, does not seek relief under *Avena* and he does not claim to be entitled to any of the relief at issue in *Medellin*.

[7]     As the respondent correctly notes, absent a Supreme Court decision that provides enforceable rights and a remedy under the Vienna Convention, Gomez's claim is precluded by the rule in *Teague v. Lane*, 489 U.S. 288 (1989), which bars relief on collateral review based on a new rule.  The AEDPA, 28 U.S.C. § 2254(d)(1), which requires a federal habeas corpus court to deny relief that is contingent upon a rule of law not "clearly established" at the time the challenged state court conviction became final, would also bar habeas corpus relief where a petitioner relies on the retroactive application of a new rule of law.  *See Williams v. Cain*, 229 F.3d 468, 475 (5th Cir. 2000); *Caldwell v. Johnson*, 226 F.3d 367, 374 (5th Cir. 2000).

Gomez argues that he is entitled to relief because his indictment was fundamentally defective.  Gomez reasons that the indictment was flawed because the State failed to present sufficient evidence at trial.  Thus, as the respondent correctly notes, Gomez's argument is really a challenge to the factual sufficiency of the evidence.  The state habeas corpus court rejected Gomez's claim, finding that his challenge to the sufficiency of the evidence was "not cognizable" on collateral review.  *See Ex parte Gomez*, No. 66,175-01 at 94 (citing *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988)).

As the state court correctly found, it has long been the law in Texas that challenges to the sufficiency of the evidence are not cognizable on post-conviction habeas review.  *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1988); *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988); *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986);  *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App.), *cert. denied*, 454 U.S. 943 (1981). Gomez's failure to raise his claim in a procedurally proper manner deprived the state court of the opportunity to review the claim, resulting in a procedural default.  *See Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  The Fifth Circuit has recognized that where, as here, a habeas petitioner has failed to raise an insufficiency-of-the-evidence claim properly on direct appeal, the claim is barred by the doctrine of procedural default.  *See West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997);  *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

Gomez does not allege or show that he fits within a recognized exception to the doctrine of procedural default. Even if the claim was not procedurally barred, it fails as a matter of law because challenges to the factual sufficiency of the evidence are not cognizable on federal habeas corpus review.[8]   A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.), *cert. denied*, 510 U.S. 1025 (1993).   Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the jury charge. *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991). This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber." *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution").   Because Gomez's challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable.   The respondent's motion for summary judgment on this issue is granted.

---

[8]   Gomez does not challenge the legal sufficiency of the evidence here and any such claim is without merit.  As the intermediate appellate court concluded on direct review, the State presented "overwhelming evidence" of Gomez's guilt. *See Gomez v. State*, No. 13-03-000627-CR (Tex. App. — Corpus Christi April 21, 2005). This Court's independent review of the record confirms the evidence was legally sufficient to support the verdict in this instance. *See Jackson v. Virginia*, 443 U.S. 307 (1979) (holding that the evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

### E.   Ineffective Assistance of Counsel

Gomez argues that he is entitled to relief because he was denied effective assistance of counsel at his trial.  Gomez claims that his counsel was deficient for the following reasons: (1) he failed to file a motion to quash the indictment; (2) he failed to file a motion to suppress evidence seized in violation of the Fourth Amendment; (3) he failed to file a motion to suppress evidence or raise a claim under the Vienna Convention;  (4) he failed to suppress evidence of Gomez's extraneous offenses; and (5) he failed to call witnesses about the "true owner" of the residence where the stash of heroin was recovered.  The state habeas corpus court rejected these allegations, concluding ultimately that the "totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel[.]"  *Ex parte Gomez*, No. 66,175-01 at 96.  Noting that these claims were rejected on state habeas corpus review, the respondent argues that Gomez is not entitled to relief.[9]

Gomez's claim is governed by the familiar standard found in *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel.  To prevail on an ineffective-assistance claim, Gomez must establish both of the following two elements of the *Strickland* test: (1) that counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable

---

[9]     Assorted claims of ineffective assistance of counsel were also rejected on direct appeal.  *See Gomez v. State*, No. 13-03-000627-CR (Tex. App. — Corpus Christi April 21, 2005, pet. ref'd), *cert. denied*, — U.S. —, 126 S. Ct. 2324 (2006) (No. 05-9965).

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-prong *Strickland* test).   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance.  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694. The petitioner fails to demonstrate that his

counsel's performance was deficient or that he was actually prejudiced as a result for reasons discussed in more detail below.

### 1.      Failure to File a Motion to Quash the Indictment

Gomez claims that his attorney was defective because he failed to object or file a motion to quash the indictment.  (Doc. # 2, *Memorandum*, at 45).  Gomez contends that the indictment was defective because the State failed to present sufficient evidence in support of the conviction.  As discussed previously, this sort of claim attacks the factual sufficiency of the evidence, and not the validity of the indictment.

Gomez fails to allege or show that his attorney had a valid objection to raise in a motion to quash the indictment.[10]  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted);  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.");  *Lavernia v. Lynaugh*, 845

---

[10]      Gomez's attorney did make a motion for an instructed verdict after the State rested, arguing that the State failed to prove all of the necessary elements of its case.  *See Court Reporter's Record*, vol. 6, at 62.  The trial court denied the motion.  *See id*.  Gomez did not challenge the legal sufficiency of the evidence on direct appeal, meaning that any such claim is procedurally barred from federal habeas corpus review.  More importantly, any challenge to the legal sufficiency of the evidence lacks merit in this instance for reasons noted previously in connection with Gomez's challenge to the sufficiency of the indictment.

F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

### 2.       Failure to File a Motion to Suppress Evidence

Gomez claims that his attorney was defective because he failed to file a motion to suppress evidence that was seized in violation of the Fourth Amendment.  (Doc. # 2, *Memorandum*, at 45, 47-51).  As noted above, the record reflects that Gomez's counsel did file a motion to suppress.  *See Clerk's Record*, Cause No. 940736 at 43-45.  In response to the motion, the State noted that police officers obtained signed consent forms from Gomez and his sister before searching the apartment that the two shared.  *See Court Reporter's Record*, Pretrial Motions, at 7-9.  It is not clear from the record whether the trial court ruled on the motion or whether it was withdrawn.  Gomez insists, nevertheless, that his attorney should have challenged the consent forms because his signature was "forged."

The validity of the search was addressed at trial.  Before sponsoring any testimony about the heroin and other drug-related evidence discovered in the apartment that Gomez shared with his sister, Lorena Gomez, the State introduced consent forms signed by both siblings. *See Court Reporter's Record*, vol. 5, at 68-71.  Sergeant Yanez testified that he explained the forms to Gomez and his sister in both English and their native language, Spanish. *See id*. at 66, 68-71.  Sergeant Yanez testified that Gomez and his sister understood the forms and signed the forms in his presence. *See id*.  Sergeant Yanez stated that Gomez and his sister were cooperative and that no threats or promises were made to induce their

20

consent.  *See id.*  Officer Fred Wood, who was present during the arrest and the subsequent search, testified that he observed Gomez sign the consent form at the apartment.  *See id.* at 94.

Gomez's counsel cross-examined Sergeant Yanez  in detail about the consent forms that were signed by Gomez and his sister.  *See id.* at 71-77.  Sergeant Yanez admitted that he did not do any personal investigation to determine whose name was on the lease or the utility bills.  *See id.* 72-75.  Sergeant Yanez clarified that he obtained consent from Gomez because Gomez "stated he lived there."  *See id.* at 73. Sergeant Yanez explained further that he was asked to obtain consent from Gomez's sister after another officer determined that the apartment was also her residence.  *See id.* at 76.

The state habeas corpus court rejected Gomez's claim that his attorney was deficient for failing to file a motion to suppress.  *See Ex parte Gomez*, No. 66,175-01 at 94-96.  In doing so, the state habeas corpus court implicitly found that Gomez consented to the search. Under the governing standard of review, the state court's factual findings are entitled to deference and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but also to any implicit findings made by the state court.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

Gomez has not presented any evidence to rebut the state court's factual findings. Gomez did not testify at trial or challenge his consent to the search, and he offers nothing more than his own conclusory allegations in support of his claim. The Fifth Circuit has "made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir.) (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)), *cert. denied*, 537 U.S. 1084 (2002); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim). It follows that Gomez's unsupported allegations are not sufficient to demonstrate deficient performance or actual prejudice in this instance. *See Collier*, 300 F.3d at 587.

### 3.    Failure to Raise a Vienna Convention Claim

Gomez also appears to fault his attorney for failing to file a motion to suppress based on a violation of Article 36 of the Vienna Convention. As explained above, the Supreme Court has held that the Vienna Convention does not benefit individuals. *See Sanchez-Llamas*, — U.S. —, 126 S. Ct. at 2679; *Jimenez-Nava*, 243 F.3d at 197. Thus, the treaty creates no rights enforceable by individuals through a court of law. More importantly, even if there were a violation of the Vienna Convention, it does not afford a remedy of suppression. *Sanchez-Llamas v. Oregon*, — U.S. —, 126 S. Ct. at 2687.

Because Gomez had no independently enforceable right under the Vienna Convention, he does not show that his defense counsel was deficient for failing to raise an argument on those grounds.  Moreover, because there is no authority showing that a Vienna Convention violation warrants the suppression of evidence as a remedy, Gomez further fails to establish actual prejudice.  Absent a showing of deficient performance, or that he was actually prejudiced by his counsel's efforts, Gomez has no valid ineffective-assistance claim.

### 4.    Failure to File a Motion to Suppress Extraneous Offenses

Gomez claims that his attorney was defective because he failed to file a motion to suppress evidence of extraneous offenses. (Doc. # 2, *Memorandum*, at 47-50).  In particular, Gomez points to "prior crimes" and "wrongful acts" alleged against him in cause numbers 940734 and 940735, arguing that these offenses should have been excluded under Rule 404(b) of the Texas Rules of Evidence.[11]  These offenses, which involved Gomez's delivery of heroin to an undercover officer on February 19, 2003, and on February 27, 2003, are what led to Gomez's arrest and the search of his apartment where more heroin was discovered along with tools of the drug trade.  Although the offenses were charged in separate indictments, the delivery-of-heroin charges in cause numbers 940734 and 940735 were tried

---

[11]    Like Rule 404(b) of the Federal Rules of Evidence, Rule 404(b) of the Texas Rules of Evidence provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction."  TEX. R. EVID. 404(b).

together with the offense at issue in cause number 940736, namely, possession of heroin with intent to deliver.

Under Texas law, extraneous offenses may be admissible as "same transaction contextual evidence" when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App.) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)), *cert. denied*, 546 U.S. 962 (2005). This type of evidence is admissible when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete. *Prible*, 175 S.W.3d 732. Under these circumstances, "the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

Gomez fails to show that the evidence of his other offenses was inadmissible in the joint trial of his three indictments. Likewise, Gomez fails to show that these offenses were improperly joined for trial. *See* TEX. PEN. CODE § 3.02 (providing that a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode). Gomez's counsel could have requested a severance. *See id.* § 3.04. Even if counsel was deficient for failing to do so, however, Gomez fails to show any harm because evidence of the other offenses would have been admissible in separate proceedings for reasons described above as "same transaction contextual evidence." *Prible*, 175 S.W.3d at 731-32; *see also Dominguez v. State*, 62 S.W.3d 203, 208 (Tex. App. — El Paso 2000, pet.

ref'd) (holding that failure to grant a severance was harmless because evidence of each crime would be admissible in a separate trial of the other offense as same transaction contextual evidence).  Thus, Gomez has failed to allege facts showing that his counsel was deficient or that he was actually prejudiced by the evidence of his other offenses.

### 5.    Failure to Call Witnesses

In his response to the summary judgment motion, Gomez adds a claim that his attorney was defective because he failed to call witnesses to prove the identity of the "true owner, renter of the apartment" where police discovered the heroin.  (Doc. # 14, *Response*, at 3).  His federal habeas petition and supporting memorandum do not clearly raise such a claim.  (Doc. # 1, *Petition*; Doc. # 2, *Memorandum*, at 49-52).  However, this claim was raised and rejected on state habeas corpus review.  *See Ex parte Gomez*, No. 66,175-01 at 95. In that proceeding, the state court found that Gomez failed "to meet his burden of identifying the witnesses, showing that they were available, and showing how the witnesses' testimony would have benefitted him."  *Id.* (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986)).

Gomez fails to show that the state court erred by dismissing his claim or that he is entitled to federal relief on this issue.  The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have testified are largely speculative."  *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. Aug. 14, 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "Where the

only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations and quotations omitted). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Although Gomez complains that his counsel failed to call witnesses on his behalf, he fails to identify any potential witness or to establish that the proposed witness would have testified if called. Moreover, he does not provide a summary of the testimony that the witness would have offered and he does not otherwise show that the testimony would have been favorable. Absent affidavits (or similar matter) from any of the above-referenced witnesses, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre*, 238 F.3d at 636.

In conclusion, Gomez has not established deficient performance or actual prejudice, and he further fails to demonstrate that he received ineffective assistance of counsel at his trial. Gomez likewise fails to show that the state court's decision to reject his claim was contrary to clearly established Supreme Court precedent. Accordingly, Gomez fails to show that he is entitled to relief on his claim for ineffective-assistance on this issue.

**F.     Errors During State Habeas Corpus Review**

26

Gomez contends that he is entitled to relief because the state habeas corpus court failed or refused to hold a hearing on his application. The respondent notes that this claim is procedurally barred because Gomez did not raise this claim in state court. The respondent also correctly notes that this claim fails as a matter of law because errors that allegedly arise during a state habeas corpus proceeding are not cognizable on federal habeas corpus review. In that respect, it is well established in this Circuit that "infirmities in state habeas corpus proceedings do not constitute grounds for relief in federal court." *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.), *cert. denied*, 527 U.S. 1056 (1999); *see also Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir.), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied sub nom. Nichols v. Johnson*, 518 U.S. 1022 (1996) (citations omitted). Instead, a habeas corpus petitioner must demonstrate "constitutional error at the trial or direct review" before a federal court may issue the writ. *Morris*, 186 F.3d at 585 n.6.

Gomez has failed to establish that his trial or direct appeal was tainted by constitutional error. Absent a showing that he was deprived of the ability to present a valid claim, Gomez has not demonstrated a valid claim for federal habeas corpus relief. Thus, he has not shown that the state habeas corpus court erred by failing to conduct an evidentiary hearing on his application. The respondent's motion for summary judgment on this issue is granted.

## IV.    CERTIFICATE OF APPEALABILITY

27

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

28

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.     The respondent's motion for summary judgment (Doc. # 13) is **GRANTED**.

2.     The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.     A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on  March 26th , 2008.

Nancy F. Atlas
United States District Judge

29